IRWIN v. CROOK AND BEMAN.

1. BONDS MUST BE DELIVERED.—Delivery is undoubtedly essential to the validity of bonds, regardless of the object for which they are given.

2. APPROVAL OF STATUTORY BONDS.—The main, if not the exclusive purpose in requiring the approval of statutory bonds by a designated officer is to protect the obligee, whether such obligee be an individual or the public.

3. DELIVERY OF STATUTORY BOND WITHOUT APPROVAL.—The delivery of a statutory bond may (in the absence of affirmative statutory words in effect declaring the unapproved instrument a nullity), be sufficiently complete without the official approval to bind the sureties, where the officer has entered upon the discharge of his duties to the public, or where the obligee has in words or by conduct indicated his satisfaction therewith, and through reliance thereon has placed himself in a less favorable attitude.

4. STATUTORY AND OFFICIAL BONDS SUBJECT TO SAME RULES.—Appeal bonds, replevin bonds, and the like, are classified with technical official bonds, and in the absence of statutory differences are subject to the same general rules of law.

5. WAIVER OF APPROVAL BY OBLIGEE.—Where a statute requires that the sureties upon an appeal bond shall be approved by the court, it is competent for the obligee to waive such approval. And if the waiver clearly appear the instrument is binding upon the sureties, though not formally approved.

6. APPROVAL OF APPEAL BONDS.—The statute simply directs the approval of appeal bonds by the court or clerk; it does not specify the manner of approval.

7. POWER OF COURT TO MODIFY ORDER IN APPEAL CASES. — The court has power at the same term to annul or modify a former or-

der so as to extend the time for filing an appeal bond, and author-
ize the approval to be by itself instead of the clerk.

8. In the absence of an unmistakable legislative intent to make the
approval an absolute *sine qua non* to the validity of a statutory
bond for any purpose, the approval provision is not so far manda-
tory as to be a shield for the protection of fraud. And if the surety
voluntarily executes an appeal bond and delivers it unconditionally
to the principal therein named, and the principal without condition
delivers it to the clerk who receives it and files it and it is during
the same term approved by an order of court, if appellee without
fault on his part relying upon its validity in good faith litigates the
appeal and incurs additional labor and expense, the sureties are es-
topped, in a suit on the bond by the obligee, from setting up a secret
understanding with the clerk.

## *Error to District Court of Lake County.*

IN January, 1883, a money judgment was rendered by the
county court of Lake county in favor of plaintiff in error,
Jeremiah Irwin, and against George E. and John King. The
Kings undertook to perfect an appeal to the district court.
In pursuance of statute the county court entered an order
fixing the time within which the appeal bond should be filed,
and directing the clerk to approve the same. Within the
time thus designated, the Kings presented to the clerk a
bond apparently perfect in all respects, being duly signed
and sealed by themselves as principals and by defendants in
error, Crook and Beman, together with one Brossier, as sure-
ties. This bond was deposited with the clerk and marked
by him as filed on the 8th of February, 1883. He declined,
however, to indorse upon the instrument his approval in
writing, because, as he claimed, the sureties should have
justified before him instead of before a notary public.

Afterwards, and on the 26th day of February during the
same term of the county court, on motion of counsel for the
Kings, the court by an order of record vacated its former or-
der with reference to the bond so far as the approval by the
clerk was concerned, and entered the approval by the court
*nunc pro tunc* as of the said 8th of February. The appeal
was then treated by the parties as taken, and the requisite

VOL. XVII.—2

transcript and papers were duly forwarded to the district court. Judgment being obtained in the latter court against the Kings and the same remaining unpaid, the present suit was instituted upon the bond against the principals and sureties therein named. The court found in favor of the sureties, Crook and Beman. To review the judgment entered upon this finding, the present writ of error was sued out.

On the trial evidence was received, showing that after the bond had been deposited with the clerk of the county court, and by him filed as aforesaid, he agreed with Cook and Beman that he would not indorse his approval thereon. He entirely neglected to notify either plaintiff in error, Irwin, who was the obligee in the bond, or the judge of the county court, or any other person, of this understanding or agreement. Nor did Crook or Beman inform either appellee or the judge of this understanding, and both acted in total ignorance thereof.

Other material facts sufficiently appear in the opinion.

Mr. N. ROLLINS, for plaintiff in error.

Messrs. RUCKER & EWING, and Mr. A. T. GUNNELL, for defendants in error.

CHIEF JUSTICE HELM delivered the opinion of the court.

Delivery is undoubtedly essential to the validity of a bond, whether it be given in perfecting an appeal or for some other purpose. In providing for statutory bonds, the law usually directs that some official, who is a disinterested third party, shall approve the sufficiency of the sureties executing the same. It is contended in the present case that the omission of the clerk's approval from the appeal bond, coupled with his assurances to the sureties, avoided all liability on their part to the obligee. The correctness of this contention cannot be conceded.

*First.* The approval of a statutory bond by a designated

officer may incidentally operate to prevent unreasonable demands and captious objections. But primarily, this precaution is not for the benefit of the principal obligor or the sureties. Its main, if not its exclusive purpose, is unquestionably to protect the obligee, whether such obligee be an individual or the public. Both principle and authority support the proposition that the delivery of such a bond may, in the absence of affirmative statutory words in effect declaring the instrument without the formal indorsement of approval thereon a nullity, be sufficiently complete, notwithstanding the absence of such official approval, to bind the sureties, where the officer has entered upon the discharge of his duties to the public, or where the obligee has in words or by conduct indicated his satisfaction therewith and through reliance thereon has placed himself in a less favorable attitude. *Clarke v. The State*, 7 Blackford, 570 ; *Musselman v. Commonwealth*, 7 Penn. St. 240 ; *Davis v. Haydon*, 3 Scam. 35 ; *Bartlett v. Willis et al.*, 3 Mass. 85 ; *Young v. The State*, 7 Gill. & J. 253 ; *McCracken v. Todd*, 1 Kans. 148 ; *People v. Edwards*, 9 Calif. 286 ; *Burgess v. Lloyd*, 7 Md. 178 ; *Jones v. The State*, 7 Mo. 81 ; *Skellinger v. Yendes*, 7 Wend. 306.

Most of these cases relate to the bonds of public officers. But Mr. Murfree in his excellent work on Official Bonds at sec. 36 classifies appeal bonds, replevin bonds, and the like with technical official bonds and declares them, in the absence of statutory differences, subject to the same general rules of law. Certainly the omission of a formal approval ought not to affect the rights of the individual obligee as against the sureties more injuriously than it does those of the people in suits upon public official bonds.

The same author at sec. 48 says : " And in like manner the approval of the bonds of officers generally by the appropriate tribunal is necessary, *not to the validity of the bonds*, but to the right of the officers to exercise the powers, and discharge the duties of their offices. In this, however, as in other cases, acceptance of the bond may be presumed

from the action, or, in proper cases, the inaction of the officer or court; thus the acceptance of a bond duly offered by an administrator will be presumed from the issuance of his letters of administration." And at sec. 59 he makes the following observation : " It is safe to say, however, that no law which requires of an official person the duty of examining and approving an official bond can be so far mandatory as that his neglect to discharge his duty can release the obligors in such bond from the liability they incur by its execution, if under it the office has been assumed and duty performed or neglected." Finally, at sec. 82, he declares that, " If a statute, in prescribing that a bond shall be given in certain legal proceedings, *as for an appeal*, requires that such bond, to be valid, shall be approved by the court, it is nevertheless competent for the party in interest to waive such approval, and if that waiver be duly made to appear, the bond is fully as valid and obligatory as it would have been if the statute had been literally followed," citing *Ester v. Acklemeyer*, 81 Ind. 163; *Smock v. Harrison*, 74 Ind. 348, and other cases.

With reference to the last foregoing proposition, we observe that while in each of the cases cited by the author to support the same, there appears to have been an affirmative verbal or written declaration of the obligee concerning the sufficiency of the sureties, the rule must *a fortiori* apply in cases where the obligee's satisfaction is quite as clearly expressed by conduct instead of words.

Had the clerk of the county court transmitted the case to the appellate tribunal without any formal approval of the bond, either by himself or the court, and had plaintiff in error without objection proceeded to trial *de novo*, the approval would probably have been either presumed from the conduct of the clerk in filing the bond and transmitting the case or treated as waived by the conduct of plaintiff in error. The understanding between the sureties and the clerk of which plaintiff in error was ignorant, would not in such case have been permitted to cancel the liability of the sureties to him.

*Second.* We do not, however, predicate our decision in the case at bar upon the foregoing grounds.   For while the clerk omitted to indorse his approval upon the bond in suit, it appears that the court by a subsequent order at the same term modified the clerk's authority in the premises and approved the bond himself.   The statute simply directs the approval by the court or clerk ; it does not specify the manner of approval.   That the court had power at the time this action was taken to annul or modify its former order both as to the official who should approve the bond and as to the time of approval, there can be no doubt.   But counsel contend that by virtue of the conference and understanding between the clerk and defendants in error, the latter's signatures were in legal effect erased from the instrument, and hence the subsequent action of the court in the premises could have no binding operation upon them.

Under the circumstances here presented, we are clearly of the opinion that defendants in error are estopped from questioning the validity of the bond.   They voluntarily executed this instrument as sureties, even attaching their justifications thereto.   They then of their own free will *unconditionally* delivered it to one of the Kings, a principal and co-obligor therein, well knowing the use for which it was designed and the liability to be incurred.   King, as they undoubtedly supposed he would, unconditionally delivered it to the clerk of the county court for the purpose of perfecting his appeal. Thus there were neither conditional nor escrow features connected with the original execution or delivery.   The bond was filed by the clerk, an act that should be performed only after approval, and which may be taken as *prima facie* evidence of the intent to approve.   Subsequently the court, being entirely ignorant of any effort on the part of defendants in error to procure a release from liability, on motion of the appellants and principal obligors, entered the order approving the same *nunc pro tunc* as of the date of filing.   Defendants in error made no effort to remove the instrument from the files, or to procure an order of release, or to notify

plaintiff in error, the party most concerned, of their desire to avoid liability or attempted withdrawal. They rested content upon the clerk's assurances. Nor did plaintiff in error have any notice or knowledge otherwise of their wishes, or conduct. There was nothing on the face of the instrument or proceedings to fairly put him upon inquiry, and he was justified in assuming, even if aware of the delay in connection therewith, that the approval by the court obviated any question touching the validity of the obligation in this respect.

Plaintiff in error was seriously injured by the conduct of defendants in error in the premises. Relying upon the sufficiency of the bond, he refrained from proceeding to collect his judgment and in good faith in the district court re-litigated the cause *de novo*. The bond was, whether rightfully or wrongfully we do not determine, instrumental in the discharge of his attachment levy and garnishee process. We are not informed of the financial condition of his judgment debtors when the appeal was taken, but if it be assumed that they were then insolvent and that he could not, even aided by his attachment proceeding, have collected his debt, yet he incurred large additional expense and annoyance as well as loss of time in conducting the further litigation. If a case could ever arise where in this connection an application of the doctrine of estoppels *in pais* is justifiable, the present would seem to be such a case.

We are aware that there are decisions announcing views apparently in conflict with the foregoing; notably, *People v. Bostwick*, 43 Barber, 1, afterwards affirmed by the court of appeals. But we are fully sustained on principle by *State v. Peck*, 53 Me. 284, *Millet v. Parker*, 2 Metc. (Ky.) 608, and *Brown et al. v. Murdock et al.*, 16 Md. 521. These opinions, especially the one in *State v. Peck*, review *in extenso* the cases bearing upon the subject. The opinion in *Millett v. Parker* is severly criticised in *People v. Bostwick;* but the learned judge who pronounced the views of the court in *State v. Peck* in turn ably challenges the reasoning in *People*

*v. Bostwick* and shows that the authorities there relied on fail to support the doctrine announced.

Our conclusion is, that when the surety voluntarily executes an appeal bond and delivers it unconditionally to the principal therein named, and the principal without condition delivers it to the clerk, who receives it and files it, and it is during the same term approved by an order of court, if appellee, without fault on his part, relying upon its validity in good faith litigates the appeal, and incurs additional labor and expense, the sureties are estopped from setting up in a suit by appellee an agreement with the clerk or appellant, of which appellee had no notice or knowledge.

There is no disposition to undervalue the importance and usefulness of statutory provisions relating to the approval of bonds. We do not intimate that these provisions are directory merely. We simply hold that in the absence of an unmistakable legislative intent to make the approval an absolute *sine qua non* to the validity of the bond for any purpose, this statutory provision is not so far mandatory as to become a shield for the protection of actual or constructive fraud.

We shall refrain from properly characterizing the conduct of the clerk of the county court in the premises. It is to be hoped that there are palliating circumstances not shown by the record. His officious advice to defendants in error against remaining sureties, and his failure to notify plaintiff in error or the court of his understanding with the sureties, are deserving of censure. He should not have filed the bond before its approval, or have transmitted the cause to the appellate court without explanation. He misled defendants in error who were doubtless acting in good faith, and is largely responsible for the present litigation with its attendant expense.

The judgment is reversed and the cause remanded.

*Reversed.*